576 So.2d 713 (1991)
Douglas Ray MEEKS, Petitioner,
v.
Richard L. DUGGER, Respondent.
No. 71947.
Supreme Court of Florida.
April 11, 1991.
Larry Helm Spalding, Capital Collateral Representative and Billy H. Nolas, Chief Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Richard E. Doran, Director, Criminal Appeals, Tallahassee, for respondent.
PER CURIAM.
Douglas Ray Meeks, a Florida prisoner under sentence of death, petitions this Court for a writ of habeas corpus. Meeks seeks relief from two death sentences arising from two separate convenience store murders. He alleges that available nonstatutory mitigating evidence was excluded from his sentencing hearings, and he is therefore entitled to new sentencing proceedings pursuant to Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.[1]
*714 Meeks was indicted for two first-degree murders occurring in separate mini-market robberies in Perry, Florida. The first indictment alleged that Meeks entered a Majic Market convenience store on October 24, 1974, and, while engaged in committing a robbery, mortally stabbed the store clerk, Chevis Thompson. The second indictment alleged that two weeks later, on November 6, 1974, Meeks and Homer Hardwick entered a convenience store and committed an armed robbery in which the store clerk and a customer, Lloyd Walker, were shot. Walker later died of his wounds. The state elected to try Meeks separately for each indictment.
At the penalty phase of both trials, the jurors were instructed to consider only those mitigating circumstances enumerated in section 921.141, Florida Statutes (1975).[2] *715 The jury recommended death in both instances, and the trial court imposed the recommended sentences, referring only to the statutory mitigating circumstances in its orders.
In the Walker case, the trial judge found four aggravating factors, specifically: (1) the murder was committed during the commission of a violent felony; (2) the murder was committed for the purpose of avoiding arrest; (3) the murder was committed for pecuniary gain; and, (4) the murder was committed to hinder the enforcement of laws. The court also found two mitigating circumstances: (1) lack of significant criminal history and (2) Meeks' youthful age and low intelligence. In the Thompson case, the trial judge found the same four aggravating circumstances plus the circumstance that Meeks had been convicted previously of a capital felony (the Walker murder). One mitigating circumstance was found (Meeks' youthful age and low intelligence). Meeks' convictions and sentences of death were affirmed by this Court on direct appeal. Meeks v. State, 336 So.2d 1142 (Fla. 1976), and Meeks v. State, 339 So.2d 186 (Fla. 1976).
Following the United States Supreme Court's decision in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), we ordered the sentencing court to conduct a Gardner inquiry to determine whether Meeks' death sentence for the murder of Lloyd Walker was based upon consideration of evidence which was not known to Meeks or which he had no opportunity to explain or deny. The trial judge subsequently stated that his decision was based solely on information known to Meeks, and this Court found no violation of the Gardner principle. Meeks v. State, 364 So.2d 461 (Fla.), cert. denied, 439 U.S. 991, 99 S.Ct. 592, 58 L.Ed.2d 666 (1978).
In 1980, Meeks sought postconviction relief under Florida Rule of Criminal Procedure 3.850 after a death warrant had been signed by the governor. The trial court denied relief, but we stayed Meeks' execution and remanded the cause for an evidentiary hearing on the issue of ineffective assistance of trial counsel during the sentencing phase of the trial. Meeks v. State, 382 So.2d 673 (Fla. 1980). After denial of his rule 3.850 motion on remand, Meeks again appealed and this Court affirmed. The Court found that neither trial counsel's alleged failure to ask for additional peremptory challenges during jury selection nor counsel's introduction of evidence during the penalty phase in which he attempted to demonstrate that Meek's codefendant was the more dominant participant constituted ineffectiveness. Meeks v. State, 418 So.2d 987 (Fla. 1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983).
Meeks then petitioned for federal habeas corpus relief in the United States District Court, and relief was denied in 1985. He appealed to the Eleventh Circuit, which stayed his second scheduled execution pending its review of his claim on the merits. In 1987, while Meeks' appeal was still pending, the United States Supreme Court rendered its decision in Hitchcock v. Dugger. Consequently, Meeks moved for leave from the Eleventh Circuit to present his Hitchcock claim to this Court. The motion was granted. Meeks v. Dugger, No. 87-3281 (11th Cir. Nov. 18, 1987) (order granting leave to present Hitchcock claim).
In Hitchcock, the United States Supreme Court found it was error for the trial court to instruct the jury to consider only statutorily enumerated mitigating circumstances and for the court to sentence a defendant to death if the trial judge only considered those same statutory mitigating circumstances. We have previously recognized that the recent Hitchcock decision represents a sufficient change in the law to defeat a claim that the issue is procedurally barred. See, e.g., Thompson v. Dugger, 515 So.2d 173 (Fla. 1987), cert. denied, 485 U.S. 960, 108 S.Ct. 1224, 99 L.Ed.2d 424 (1988); Demps v. Dugger, 514 So.2d 1092 (Fla. 1987); Delap v. Dugger, 513 So.2d 659 (Fla. 1987). In prior cases involving Hitchcock claims, we have recognized that errors may require a new sentencing hearing while in others we have applied the harmless error rule. See, e.g., Riley v. Wainwright, 517 So.2d 656 (Fla. 1987); Thompson v. Dugger; Morgan v. State, 515 So.2d 975 (Fla. 1987), cert. denied, 486 U.S. 1036, *716 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988). But see Delap v. Dugger; Demps v. Dugger; Tafero v. Dugger, 520 So.2d 287 (Fla. 1988).
Meeks' Hitchcock claim asserts: (a) that the record clearly establishes that the sentencing judge believed he could consider only statutory mitigating circumstances; (b) that the sentencing judge instructed the jurors accordingly and, in doing so, excluded available nonstatutory mitigating evidence; and, (c) that Meeks' defense counsel was also restricted by the then-prevailing statutory construction and thus failed to investigate, develop, and present available nonstatutory mitigating evidence regarding Meeks' character and background, and his emotional, intellectual, and psychological deficiencies. In support of his position, Meeks presented the affidavit of his trial attorney, wherein the attorney stated that he felt constrained by the language of the statute and did not investigate any other possible mitigating circumstances. Meeks also offered the report of a psychologist prepared January 25, 1988. The results in the report suggest several mitigating circumstances: that Meeks is easily led, suffers from a plethora of mental problems, has difficulty with abstraction and concept formulation, comes from a background of poverty and depravation, has abused alcohol and drugs from an early age, and was in fact under the influence at the time of the offense. Further, Meeks submitted the affidavits of two of his sisters and his mother, chronicling his underprivileged childhood.
Because of the erroneous jury instruction, the state concedes that the record establishes a Hitchcock violation but maintains the error is harmless. It argues that the record establishes "beyond a reasonable doubt that, after weighing the aggravating factors against the statutory and nonstatutory mitigating factors, the judge would have properly imposed death, regardless of a life recommendation." Demps, 514 So.2d at 1094. We might accept this proposition if we look only at the face of the record. However, according to the affidavits filed with this motion, Meeks' counsel did not seek to develop nonstatutory mitigating evidence because he was constrained by the then-prevailing statutory construction. These affidavits assert that substantial nonstatutory mitigating evidence could have been presented, including the fact that Meeks had been a patient in a state mental hospital, that he had received subsequent treatment with psychotropic medication, that he had a history of drug and alcohol abuse, and that he suffered from severe emotional problems as a result of his deprived childhood. On their face, the contents of these affidavits are sufficient to negate the conclusion that the Hitchcock error was harmless. The merits of the claims can only be determined by an evidentiary hearing.
Pursuant to our decision in Hall v. State, 541 So.2d 1125 (Fla. 1989), Hitchcock claims should now be raised by motion for postconviction relief. However, Meeks' petition for habeas corpus was filed before our decision in Hall. Therefore, we remand this case to the trial court for an evidentiary hearing directed to the Hitchcock allegations of this petition as if they had been filed pursuant to Florida Rule of Criminal Procedure 3.850. The issue to be decided will be whether the Hitchcock error was harmless. In the event the court decides that the error was not harmless beyond a reasonable doubt, the sentences of death should be set aside and new sentencing proceedings conducted before separate juries.[3]
It is so ordered.
*717 SHAW, C.J., and McDONALD and GRIMES, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, J., concurs.
OVERTON, J., dissents with an opinion.
KOGAN, Justice, specially concurring.
Although I agree with the general thrust of the majority opinion and its result, I believe the majority does not address some of the issues in sufficient detail. I write separately to clarify and elaborate what I believe the law now requires.
First, in Hall, we stated:
If, when this opinion is filed, inmates under pending death warrants have filed habeas corpus petitions seeking relief under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), we will consider those petitions. All Hitchcock claims raised after this opinion is filed, however, must be presented in a rule 3.850 motion for postconviction relief filed with the trial court.
Hall, 541 So.2d 1125, 1128 n. 4 (Fla. 1989). As the majority concedes, Meeks' present petition for habeas corpus preceded Hall. Moreover, this petition was filed as a result of death warrants signed by the governor. Therefore, Hall is no bar to our consideration of issues to the extent they are purely legal in nature.
However, I believe the present case does involve factual questions that require resolution in an adversarial setting that can exist only in the trial court. Accordingly, I agree that this case must be remanded to the trial court, not because it fails to meet the requirements of Hall, but because it involves factual issues this Court is not in the best position to decide.
Second, I believe that both this Court and the trial court now must directly confront the root cause of the problem we face today: This Court's own inconsistent pronouncements on the admissibility of mitigating evidence during trials conducted in the 1970s. This includes the trial of Douglas Ray Meeks in 1975.
In the 1970s, because of our own erroneous interpretation of federal case law, this Court directly barred capital defendants from presenting any mitigating evidence other than that described in the narrow list contained at that time in section 921.141(7), Florida Statutes (1975). E.g., Cooper v. State, 336 So.2d 1133, 1139 & 1139 n. 7 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
In 1978, the United States Supreme Court declared such a practice invalid in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Only weeks later, this Court disingenuously stated that Cooper and other cases never had restricted defendants solely to the statutory list. In Songer v. State, 365 So.2d 696, 700 (Fla. 1978) (on rehearing), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), we retroactively amended Cooper with a few sentences arguing that our precedents "indicate unequivocally that the list of mitigating factors is not exhaustive." Id.
Yet, Cooper plainly and directly reveals this remark to be untrue. In Cooper, we stated:
The sole issue in a sentencing hearing under Section 921.141, Florida Statutes (1975), is to examine in each case the itemized aggravating and mitigating circumstances. Evidence concerning other matters have [sic] no place in that proceeding any more than purely speculative matters calculated to influence a sentence through emotional appeal. Such evidence threatens the proceeding with the undisciplined discretion condemned in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Cooper, 336 So.2d at 1139 (emphasis added). Then in a footnote we elaborated:
The legislative intent to avoid condemned arbitrariness pervades the statute. Section 921.141(2) requires the jury to render its advisory sentence "upon the following matters: (a) Whether sufficient aggravating circumstances exist as enumerated in subsection (6); (b) Whether sufficient mitigating circumstances exist as enumerated in subsection (7), which *718 outweigh the aggravating circumstances found to exist... ." (emphasis added). This limitation is repeated in Section 921.141(3), governing the trial court's decision on the penalty. Both sections 921.141(6) and 921.141(7) begin with words of mandatory limitation. This may appear to be narrowly harsh, but under Furman undisciplined discretion is abhorrent whether operating for or against the death penalty.
Id. n. 7 (emphasis in original).
Finally, Cooper directly applied this analysis by holding that nonstatutory mitigating evidence could not be admitted. Id. Specifically, Cooper held that a trial court did not err by excluding evidence about the defendant's prior employment record and potential for rehabilitation.[4]Id. at 1139. The Court then concluded:
In any event, the Legislature chose to list the mitigating circumstances which it judged to be reliable for determining the appropriateness of a death penalty for "the most aggravated and unmitigated of serious crimes," and we are not free to expand the list.

Id. (emphasis added; footnote omitted).
Only two years later, in Songer, we did exactly what we said we could not do: We judicially expanded the list to conform to Lockett.[5]
The serious error that occurred in Cooper is only underscored by the subsequent procedural history of that case. In Cooper v. Dugger, 526 So.2d 900, 902 (Fla. 1988), we vacated Mr. Cooper's death penalty in part because "the trial judge ... operated under a mistaken belief that Florida law required exclusion of nonstatutory mitigating evidence." Thus, we remanded for a new sentencing proceeding that would include presentation of the exact same evidence we earlier had deemed inadmissible. Cooper, 336 So.2d at 1139.
The effect of this remarkable inconsistency is that some defendants tried in the 1970s have been cast into a catch-22. Under Cooper and prior to Songer, they were forbidden to introduce any mitigating evidence other than that described in the statute. Attorneys, such as the one who represented Meeks in 1975, complied with what then was the law. They did not attempt to introduce this "unlawful" evidence.
Then, suddenly, Songer changed the rules retroactively. It declared that defendants always had had the ability to present nonstatutory mitigating evidence. This necessarily created confusion about what the law actually required prior to Songer.
As a result, some capital defendants face the denial of rights clearly guaranteed by Lockett and Hitchcock.[6] They potentially are subject to a procedural bar for failing to introduce mitigating evidence that, at the time, could not lawfully have been admitted in Florida. At other times, this Court has simply found "no merit" to what essentially are Hitchcock claims because there was no substantial mitigating evidence to be found anywhere in the record. In effect, this Court sometimes has held that attorneys who honored the spirit and *719 letter of Cooper  and thus failed to introduce nonstatutory mitigating evidence in the 1970s  simply waived their clients' rights under Lockett and Hitchcock.
The present case is virtually devoid of nonstatutory mitigating evidence. The primary, if not exclusive, reason for this omission is that Meeks' lawyer was obeying the dictates of the law as described in both Cooper and the relevant statutory language. In the present case, the trial occurred one year before our opinion in Cooper. I thus can only conclude that Cooper correctly describes the way in which Florida judges and lawyers regarded nonstatutory mitigating evidence during the relevant periods of time.
Cooper and Songer, read together with an honest and objective mind, reveal a serious injustice that now must be corrected. I believe the only fair thing is to require the trial court to order the resentencing of any capital defendant if: (a) the trial occurred prior to Songer; (b) reliable sworn testimony is presented in a rule 3.850 proceeding establishing that the reason for not introducing available nonstatutory mitigating evidence was because of a belief it was inadmissible under the statutes or under Cooper; and (c) counsel has presented reliable sworn testimony from persons competent to be witnesses whose testimony at a new sentencing proceeding will establish the existence of substantial nonstatutory mitigating evidence not previously introduced.
Obviously, the state should be afforded an opportunity through appropriate cross-examination to demonstrate that the alleged mitigating evidence in fact is insubstantial.
The need for a hearing is triggered by a petition filed under rule 3.850 incorporating affidavits that, if unrebutted, would establish the existence of the factors outlined above. After that hearing, a new sentencing before a jury must be ordered if the totality of the evidence supports the affidavits and thus establishes the existence of the three factors.
This analysis is entirely consistent with the prevailing view of Lockett employed by the federal courts, which frequently have rejected this Court's disposition of Lockett/Hitchcock issues. See, e.g., Smith v. Dugger, No. TCA 90-400350WS, slip op. (N.D.Fla., June 8, 1990) (citing cases). Indeed, Judge Stafford's learned analysis of this issue in Smith strongly supports the three-part test stated above. Judge Stafford has stated:
[I]n reviewing a Hitchcock claim, a federal district court must first determine whether there was any credible nonstatutory mitigating evidence that the jury either did hear or could have heard had the teachings of Hitchcock and its progeny been known at the time. If, after reviewing the entire record, the court concludes that petitioner has failed to produce or proffer any credible nonstatutory mitigating evidence, then the court must find the Hitchcock error, if any, was harmless. If, as here, petitioner produces substantial mitigating evidence, the federal district court will likely find the exclusion of such evidence to be harmful error, because the presumption of prejudice will be very difficult for the state to rebut.
Id. at 13 (first emphasis added; second emphasis in original). Judge Stafford then went on to reject the state's claim that the failure to present nonstatutory mitigating evidence at Smith's trial barred consideration of that evidence in a collateral challenge based on Lockett and Hitchcock:
[T]he court notes that defense counsel's tactical decisions were made in the context of the law as it then existed. The standard jury instruction promulgated under such law informed jurors that "the mitigating circumstances which you may consider, if established by the evidence, are these [listing the seven statutory mitigating factors]." The record makes it evident that counsel developed both his strategies as well as his arguments under the constraints of that jury instruction. To do so was reasonable at the time. Only later did the Supreme Court decide that it was error for the trial court to give the constraining instruction.
*720 Id. at 18 (citation omitted; emphasis added). Based on this analysis, Judge Stafford ordered relief in Smith, despite the fact this Court had denied such relief. Smith v. State, 556 So.2d 1096 (Fla. 1990).
The holding in Smith is all the more compelling in the present case. At the time of the Smith trial, which occurred after Songer was issued, the principal error in Florida death-penalty law was the erroneous standard jury instruction, cited by Judge Stafford. This instruction appeared to limit judge and jury solely to considering the statutory mitigating factors even if some nonstatutory mitigating evidence had been presented. This error was far less serious than the straight-forward, unqualified exclusion of such evidence announced in Cooper, under whose teachings Meeks apparently was tried. Thus, Judge Stafford's analysis is compellingly applicable to Florida capital trials conducted prior to Songer.
Applying the above analysis to the present case, I conclude that Meeks clearly has produced affidavits that now require a full evidentiary hearing. Meeks' trial occurred in 1975, before Songer, and this record is virtually devoid of nonstatutory mitigating evidence. Moreover, the present petition contains affidavits from persons apparently competent to be witnesses, and their testimony apparently embodies substantial nonstatutory mitigating evidence. This includes evidence that petitioner had been a patient in a state mental hospital; that he had received subsequent treatment with psychotropic drugs; that he had a history of drug and alcohol abuse; and that he suffered severe emotional problems as a result of a deprived childhood. Thus, the majority correctly concedes that this evidence facially is sufficient to render the Hitchcock error harmful. Majority op. at 716. In this assessment, I must agree.
The present record also contains an affidavit from John F. Howard, Meeks' trial counsel. It states that "I believed that the Florida death penalty statute restricted the introduction of evidence in mitigation of sentence to only that which directly related to the mitigating factors set out in the statute." The majority also acknowledges this statement. Id. at 716.
Thus, I agree with the majority that a hearing in the trial court now is required. I also believe that this hearing must employ the three-part test described above. If the evidence adduced in this manner supports Meeks' affidavits on all three points, the trial court will have no choice but to order a new sentencing hearing.
BARKETT, J., concurs.
OVERTON, Justice, dissenting.
I dissent. Meeks killed two convenience store clerks in separate robberies. Although there was a Hitchcock error, I would find that the error was harmless. Previously, this Court applied the harmless error analysis to a Hitchcock violation in Demps v. Dugger, 514 So.2d 1092 (Fla. 1987), and found that "the presentence investigation report, considered by the court, countered much of the nonstatutory mitigating evidence." Id. at 1093. Similarly, in Delap v. Dugger, 513 So.2d 659 (Fla. 1987), this Court found the Hitchcock error to be harmless, concluding that the five existing aggravating circumstances outweighed the mitigating evidence.
Consistent with Demps and Delap, I would find that the available mitigating evidence is insufficient, given the aggravating circumstances. The reports of the two psychiatrists who examined Meeks prior to trial contain background information recognized by the trial judge in both sentencing orders, including an express finding of Meeks' low intelligence. The mental health evidence was admissible under section 921.141(6)(b) and (f), Florida Statutes (1987). Further, I do not find that the repetitive testimony from Meeks' family concerning his childhood enables the mitigating evidence to outweigh the aggravating circumstances. I would hold that the four aggravating circumstances found in the Thompson *721 murder case and the five aggravating circumstances in the Walker murder case outweigh beyond any reasonable doubt the available mitigating evidence. I find that the error was harmless in this cause. Accordingly, I would deny Meeks' petition for a writ of habeas corpus.
NOTES
[1] Because this petition was filed prior to our disposition of Hall v. State, 541 So.2d 1125 (Fla. 1989), in which we held that all Hitchcock claims should be raised pursuant to Florida Rule of Criminal Procedure 3.850, we will allow the instant claim to be raised in a petition for writ of habeas corpus.
[2] The trial judge instructed the jury in the Lloyd Walker murder case as follows:

Members of the jury, upon conviction of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or to life imprisonment, as authorized by Florida Statute section 775.02. The proceedings shall be conducted by the trial judge before the trial jury as soon as practicable. In the proceeding, evidence may be presented as to any matter that the court deems relevant to the sentence and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in that particular section of the law. Any such evidence which the court deems to have probative value with respect to the sentencing may be received regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is afforded a fair opportunity to rebut any hearsay statements and further provided that particular portion of the law shall not be construed to authorize introduction of any evidence secured in violation of the Constitution of the United States or of Florida. The state and the defendant, or his counsel, shall be permitted to present arguments for or against sentence of death. After hearing all the evidence, the jury shall deliberate and render an advisory opinion to the court based upon the following matters: (A) Whether sufficient aggravating circumstances exist as enumerated in subsection 6 and (B) whether sufficient mitigating circumstances exist as enumerated in subsection 7 which outweigh the aggravating circumstances found to exist, and (C) based on these considerations, whether the defendant should be sentenced to life imprisonment or death. Notwithstanding the recommendation of the majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes the sentence of death, it shall set forth in writing its findings upon which the sentence of death is based. Aggravating circumstances shall be limited to the following: (A) The capital felony was committed by a person under sentence of imprisonment. (B) The defendant was previously convicted of another capital felony or of a felony involving the use of or threat of violence to the person. (C) The defendant knowingly created a great risk of death to many persons. (D) The capital felony was committed while the defendant was engaged or was an accomplice in the commission of or an attempt to commit or flight after committing or attempting to commit any robbery, rape, arson, burglary, kidnapping or aircraft piracy or the unlawful throwing, placing or discharging of a destructive device or bomb. (E) The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. (F) The capital felony was committed for pecuniary gain. (G) The capital felony was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws. (H) The capital felony was especially heinous, atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the sufferings of others. Mitigating circumstances shall be the following: (A) The defendant has no significant history of prior criminal activity. (B) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. (C) The victim was a participant in the defendant's conduct or consented to the act. (D) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor. (E) The defendant acted under extreme duress or under the substantial domination of another person. (F) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. (G) The age of the defendant at the time of the crime. These are your instructions with respect to your deliberation concerning your recommendation to the court as to whether the court should impose a sentence of life imprisonment or a sentence of death upon the defendant, Douglas Ray Meeks.
The instruction given the jury in the Chevis Thompson murder case was substantially the same as the above.
[3] We deny the claims of ineffective assistance of appellate counsel. We deny as procedurally barred Meeks' remaining claims, to wit: (1) improper doubling of aggravating factors; (2) improper use of psychiatric reports in penalty-phase proceedings; (3) erroneous jury instruction on weighing of aggravating and mitigating circumstances; (4) erroneous jury instruction on vote necessary to recommend life imprisonment; (5) failure to instruct on underlying felony in felony-murder instruction; (6) insufficient Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), remand; (7) jurors' sense of responsibility was diminished as in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[4] This holding clearly was wrong, as we ourselves have subsequently recognized. McCampbell v. State, 421 So.2d 1072, 1075-76 (Fla. 1982).
[5] This act alone was highly suspect. As we frequently have stated, a statute cannot be rendered constitutional if this can be accomplished only "by a bald judicial amendment similar to a legislative enactment." Brown v. State, 358 So.2d 16, 20 (Fla. 1978) (quoting State v. Mayhew, 288 So.2d 243, 252 (Fla. 1973) (Ervin, J., dissenting)). A bald judicial amendment is precisely what Songer achieved.
[6] The state argues that Lockett and Hitchcock somehow address different issues. I disagree with the state's interpretation as applied to this case. Both Lockett and Hitchcock rested on the proposition that "`"the sentencer"' may not refuse to consider or `"be precluded from considering"' any relevant mitigating evidence." Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 1822 (1987) (quoting Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 1671, 95 L.Ed.2d 347 (1986) & citing Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978) (plurality opinion)). Here, this Court's own erroneous interpretation of the law coupled with the words of limitation contained in the sentencing statute precluded Florida sentencers from considering relevant mitigating evidence before 1978. See Cooper v. State, 336 So.2d 1133, 1139 & 1139 n. 7 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).